UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JARED A. MYNATT, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-983-PPS-AZ |
| RON NEAL, et al., | |
| Defendants. | |

OPINION AND ORDER

Jared A. Mynatt, a prisoner without a lawyer, filed an amended complaint against Tiffany Turner, R.N., Alyssa Hudacin, R.N., Jaqueline Monaco, R.N., Dr. Marthakis, M.D., Warden Ron Neal, Health Services Administrator Sherri Fritter, and Centurion Health, LLC, because he believes he received inadequate health care when he was incarcerated at Indiana State Prison. ECF 5. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mynatt alleges that he developed abdominal pain with swelling, diarrhea, bloody stools, weight loss, vomiting, nausea, and difficulties eating around February 29, 2024. On May 10, 2024, he was referred to a gastroenterologist by a physician at Wabash

Valley Correctional Facility. Three days later, he was transferred to Indiana State Prison. During his intake exam on May 13, 2024, Mynatt told Tiffany Turner, R.N., about his condition, medical history, and recommended treatment. She indicated that she did not care about his problems.

Despite Nurse Turner's comment, Mynatt was seen by Alyssa Hudacin, R.N., on May 16, 2024. Mynatt provides no details regarding this encounter, but he asserts that she "intentionally and maliciously refused or denied plaintiff medical care by not assessing plaintiff's medical issues, and generating a false document stating plaintiff refused care that he was never offered, provided or notified of, acting with reckless disregard for plaintiff's serious medical needs in an attempt to circumvent her duties." ECF 5 at 5-6.

On May 17, 2024, Mynatt submitted a Health Care Request Form ("HCRF") about his condition. When Mynatt received no response, he submitted a second HCRF on May 24, 2024.[1] He submitted a third HCRF on May 24, 2024.[2] He was seen by medical staff at the prison on May 28, 2024. Mynatt provides no details regarding the May 28, 2024, visit.

Mynatt was taken to a consultation with an outside gastroenterologist on June 4, 2024. The provider believed that Mynatt could be suffering from ulcers or colon cancer

---

[1] Mynatt notes that this form was marked "received" on May 21, 2024, even though he did not submit it until May 24, 2024. ECF 5 at 5.

[2] Mynatt notes that this form was marked "received" on both May 19, 2024, and May 23, 2024, even though he did not submit it until May 24, 2024. ECF 5 at 5.

2

and recommended an endoscopy and colonoscopy. This physician recommended he avoid acetaminophen because it could aggravate the bleeding.

Following the June 4, 2024, appointment, Jacquline Monaco, R.N., reviewed the physician's orders and recommendations but allowed plaintiff to continue receiving acetaminophen and did not prescribe an alternative medication. Mynatt concludes that this constitutes reckless disregard to his health and risked causing him further pain and injury. Nurse Monaco forwarded the gastroenterologist's recommendations to Dr. Marthakis.

Mynatt claims that Dr. Marthakis did not order or provide him with the recommended endoscopy and colonoscopy. Mynatt further alleges that Dr. Marthakis refused to assess him. At the time he filed his complaint, Mynatt reported that the recommended procedures had not been performed.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and

3

decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (citation omitted). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To the extent that Mynatt is complaining about a lack of medical treatment for his condition between when a provider at Wabash Valley Correctional Facility recommended that he see a gastroenterologist on May 10, 2024, and when he saw an outside gastroenterologist on June 4, 2024, he cannot proceed. It takes time to obtain an appointment with a medical specialist, whether incarcerated or not. Mynatt was seen by a specialist less than a month after the consultation was recommended; this does not suggest deliberate indifference to his medical needs.

Furthermore, it is unclear what care he expected the medical staff at ISP to provide while he was waiting for a specialist to assess his needs. He complains that, upon intake, Nurse Turner indicated she did not care about his problems. This was rude, but it does not amount to a constitutional violation where Mynatt was nonetheless seen by a provider, Nurse Hudacin, only three days later. He complains that Nurse

4

Hudacin falsely stated that Mynatt refused care when in fact none was offered, but Mynatt provides no details regarding this encounter whatsoever. He complains that Nurse Monaco allowed him to continue to receive acetaminophen after the gastroenterologist advised him not to take it, but it is unclear that the medical records Nurse Monaco reviewed included this detail, and even if they did, the amended complaint does not contain facts from which it can be inferred that Nurse Monaco's allowing him to have acetaminophen was anything more than negligence.

    That leaves Mynatt's assertion that Dr. Marthakis knew of the gastroenterologists' recommendations that he receive an endoscopy and colonoscopy but ignored them. The only mention of Dr. Marthakis being contacted about Mynatt is that Nurse Monaco forwarded the gastroenterologist's recommendations to her. This single communication may suggest negligence on the part of Dr. Marthakis, but not deliberate indifference. It is unclear that Mynatt had any interaction with Dr. Marthakis whatsoever. He indicates that she refused to see him, but it is unclear when or how he asked to see her. He specifies that he filed three health care requests prior to his May 4, 2024, visit with the gastroenterologist, but he does not mention filing a single health care request following that encounter. It cannot be plausibly alleged that Dr. Marthakis was deliberately indifferent to Mynatt's serious medical needs without more information about Mynatt's attempts to obtain care following the May 4, 2024, appointment with a gastroenterologist and Mynatt's interactions – if any – with Dr. Marthakis.

Mynatt is also suing Warden Neal, who he informed of his medical needs through grievances without receiving help. Mynatt further alleges that he met with Warden Neal personally in October 2024. The meeting concerned another matter, but Mynatt also raised his medical concerns. Warden Neal indicated he did not "give a damn about [Mynatt's] health concerns." ECF 5 at 8. Here, it is unclear what information was shared with Warden Neal. What is clear is that this meeting was for a purpose other than addressing Mynatt's health concerns. While his comment was insensitive, this alone is insufficient to permit a plausible inference that Warden Neal was deliberately indifferent to Mynatt's medical needs.

Mynatt alleges that Health Services ("HSA") Administrator Sherri Fritter does not properly train or supervise her staff, and that this results in requests for medical services being delayed, unprocessed, or unanswered. He further alleges that she has a policy, custom, or unwritten rule of allowing her staff to provide inadequate care or treatment to prisoners by not processing requests in an orderly and timely fashion. There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. at 596. The amended complaint does not allege that HSA Fritter was personally involved in denying Mynatt medical care. A supervisor can also be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Here, however, the factual allegations of the amended complaint do not support an inference that either HSA

6

Fritter or her employees were deliberately indifferent to Mynatt's needs; he was seen three days after intake, and again eleven days after that. Between those two appointments, Mynatt submitted three requests for health care. The delay described here is insufficient to permit a plausible inference that HSA Fritter facilitated, approved, condoned, or turned a blind eye toward Mynatt's medical needs.

Mynatt further alleges that Centurion Health has an unwritten rule, policy, or custom of providing inadequate treatment upon intake, in that it does not mandate a physical examination of assessment by a medical physician of symptomatic inmates, including those suffering from internal bleeding or bloody stools. The Eighth Amendment does not mandate that inmates be assessed by a physician upon transfer to a new facility; Mynatt was receiving medical care in the prison where he was transferred from, and the complaint makes clear that medical care remained available to him at ISP, even if it was not dispensed with the speed and skill Mynatt would have liked.

Mynatt further alleges that Centurion Health has a policy, custom, or unwritten rule of denying or delaying care for serious medical issues to contain costs, putting profits before prisoner care. As noted by the Seventh Circuit, "administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (emphasis in original). The Constitution is only violated when those factors are considered "*to the exclusion of reasonable medical judgment* about inmate health." *Id*. (emphasis in original). Mynatt's complaint does not allege facts that

7

plausibly suggest that Centurion had a policy of considering cost savings to the exclusion of reasonable medical judgment. Thus, he cannot proceed on his claim regarding an alleged cost savings policy. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009).

      The amended complaint is short on facts, dates, and specifics about Mynatt's medical condition and the treatment he has received. Based on what it does say, it is not plausible to infer that he received constitutionally inadequate medical care. A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

This complaint does not state a claim for which relief can be granted. If Mynatt believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Jared A. Mynatt until **May 16, 2025**, to file an amended complaint; and

(2) CAUTIONS Jared A. Mynatt that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

ENTERED:  April 17, 2025.

                                       /s/   Philip P. Simon
                                       PHILIP P. SIMON, JUDGE
                                       UNITED STATES DISTRICT COURT