UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JARED A. MYNATT,

　　　　　Plaintiff,

　　　　　　　v.　　　　　　　　　　　CAUSE NO. 3:24-CV-983-PPS-AZ

RON NEAL, et al.,

　　　　　Defendants.

OPINION AND ORDER

Jared A. Mynatt, a prisoner without a lawyer, filed an amended complaint

against Tiffany Turner, R.N., Alyssa Hudacin, R.N., Jaqueline Monaco, R.N., Dr.

Marthakis, M.D., Warden Ron Neal, Health Services Administrator Sherri Fritter, and

Centurion Health. He believes he received inadequate health care when he was

incarcerated at Indiana State Prison ("ISP"), although he is no longer being held there.

ECF 13.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation

marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the

merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails

to state a claim upon which relief may be granted, or seeks monetary relief against a

defendant who is immune from such relief.

Mynatt alleges that he developed abdominal pain with swelling, diarrhea, bloody stools, weight loss, vomiting, and nausea around February 29, 2024. On May 10, 2024, while he was housed at a different correctional facility, Mynatt he was seen by Dr. Samuel Byrd. Dr. Byrd believed Mynatt's symptoms were caused by internal bleeding. He recommended an immediate colonoscopy and endoscopy. Three days later, before the recommended procedures could be performed, Mynatt was transferred to ISP.

During his intake exam on May 13, 2024, Mynatt told Tiffany Turner, R.N., about his internal bleeding, vomiting, weight loss, abdominal pain, and diarrhea. He asked Nurse Turner if she could put Mynatt's name on the list to be seen by the doctor. She refused. Mynatt asked if internal bleeding was considered a serious medical problem, and Nurse Turner responded by saying that she doesn't care about Mynatt's problems.[1]

On May 16, 2024, Mynatt was housed in a restrictive housing unit. When an inmate in restricted housing needs to see a medical provider, the custom is that the medical staff, escorted by custody staff, walk to the inmate's cell location and tell them about the visit. At that point, they ask the inmate if they want to participate in the sick call or triage visit or if they instead refuse it. If the inmate indicates he wants to participate, he is taken to a medical room later for treatment. If the inmate refuses treatment, they are provided with a refusal of treatment form.

---

[1] Mynatt notes that the IDOC's policy provides that, upon arrival, serious medical issues should be communicated to medical staff so they can assess and provide care. However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

On May 16, 2024, Mynatt was not offered an opportunity to receive care, but Alyssa Hudacin, R.N., completed a form indicating that he had refused care. The following day, Mynatt submitted a Health Care Request Form ("HCRF") about his condition. When Mynatt received no response, he submitted another HCRF on May 24, 2024. He submitted a third HCRA on May 24, 2024, too. He was finally seen by a nurse at the prison on May 28, 2024. At the visit he asked the nurse to put him on the list see Dr. Nancy Marthakis, which she did.

On May 30, 2024, Mynatt was seen by Faye Wenzel, who is not a defendant in this action. It is not clear what credentials Wenzel holds. Mynatt again asked to see Dr. Marthakis. Wenzel says that Mynatt refused treatment on this occasion, and that is why she returned Mynatt to his cell. Mynatt says this is untrue. He did not refuse treatment; he merely asked a question.

Mynatt was taken to a consultation with an outside gastroenterologist on June 4, 2024. The provider, consistent with Dr. Byrd's opinion, recommended an endoscopy and colonoscopy. Following the June 4, 2024, appointment, Jacquline Monaco, R.N., received an order for the endoscopy and colonoscopy to be performed. The same day, Dr. Marthakis also received the order, but she denied the recommended testing.

After that, Mynatt contacted several people in an attempt to get the care he needed. On July 5, 2024, he submitted a request for care and a grievance. On July 15, 2024, Mynatt spoke to Mr. Dominguez about his need for care and the lack of a response to his grievance. He told Mynatt to submit another grievance and health care request. Mynatt did as directed.

Mynatt wrote Ron Neal about the inadequacy of his care and lack of response to his grievance. On July 15, 2025, he wrote Sherri Fritter and Nancy Marthakis a letter about his need for assessment and treatment. On October 21, 2024, Mynatt spoke with Ron Neal about the medical grievances he had submitted. Warden Neal indicated he did not "give a damn about [Mynatt's] medical concerns." ECF 13 at 10. At the time he filed his amended complaint, Mynatt reported that the recommended procedures had not been performed.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the

person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To the extent that Mynatt is complaining about a lack of medical treatment for his condition between the time of his transfer to ISP on May 13, 2024, and his appointment with another outside gastroenterologist on June 4, 2024, he cannot proceed. It takes time to obtain an appointment with a medical specialist, whether incarcerated or not. Mynatt was seen by a specialist less than a month after his transfer to ISP. It cannot be plausibly inferred that the medical staff whom he addressed his concerns to in May 2024, were deliberately indifferent to his medical needs where he was scheduled with an outside specialist approximately three weeks later.

Furthermore, it is unclear what care Mynatt expected the medical staff at ISP to provide while he was waiting for a specialist to assess his needs. He complains that, upon intake, Nurse Turner indicated she did not care about his problems. To be sure, this comment was rude, insensitive and unprofessional. But it does not amount to a constitutional violation where Mynatt was nonetheless seen by a specialist approximately three weeks later.

He also complains that Nurse Hudacin falsely stated that Mynatt refused care when none was offered, but Mynatt does not describe any communication between him and Nurse Hudacin. It is unclear that they communicated at all regarding the need for care. Wrongly indicating that Mynatt refused care may suggest negligence, but the facts

included in the amended complaint do not permit a plausible inference that Nurse Hudacin was *deliberately indifferent* to his medical needs.

Mynatt is suing Nurse Monaco, but it appears that all she did was receive the gastroenterologists' recommendations and pass them on to Dr. Marthakis. It was Dr. Marthakis who determined that Mynatt would not receive the recommended testing. Nurse Monaco did precisely what one would expect a nurse to do when receiving orders—pass them along to the attending physician. On Mynatt's telling, Nurse Monaco did not refuse him testing; Marthakis did. In short, there are no allegations in the complaint to plausibly conclude that Monaco acted with deliberate indifference to Mynatt's needs.

Mynatt's complaint does not allege that he had any communication with Dr. Marthakis prior to her decision to deny the requested testing. After the denial, Mynatt continued to seek medical care and wrote to Dr. Marthakis about his concerns, in addition to submitting health care requests. Still Mynatt was not seen, the testing that had been recommended by two separate specialists was not performed, and no alternative medical care was offered. These facts permit a plausible inference of deliberate indifference on the part of Dr. Marthakis.

Mynatt is also suing Warden Neal, who he informed of his medical needs through grievances without receiving help. Mynatt further alleges that he met with Warden Neal personally in October 2024. The meeting concerned his grievances, but Mynatt also raised his medical concerns. Warden Neal indicated he did not "give a damn about [Mynatt's] medical concerns." ECF 13 at 10. If true, this is a reprehensible

6

thing to say. But Neal is not a doctor. Non-medical staff rely on medical experts and are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). While Warden Neal's comment was at the very least insensitive, this alone is insufficient to permit a plausible inference that Warden Neal was deliberately indifferent to Mynatt's medical needs, where Dr. Marthakis had determined that the testing should not be performed.

Mynatt alleges that Health Services ("HSA") Administrator Sherri Fritter does not properly train or supervise her staff, and that this results in requests for medical services being delayed, unprocessed, or unanswered. He further alleges that she has a policy, custom, or rule of allowing her staff to circumvent their duties by not processing requests in an orderly and timely fashion. There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. The amended complaint does not allege that HSA Fritter was personally involved in denying Mynatt medical care. A supervisor can also be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Here, however, the factual allegations of the amended complaint do not support an inference that HSA Fritter was deliberately indifferent to Mynatt's needs; he was seen by an outside specialist approximately three weeks after he arrived at ISP. While he may have felt neglected by the staff at the prison, someone took steps to arrange this appointment promptly and see to it that he was transported to the

appointment. While it is unclear if that person was HSA Fritter, the delay in care that Mynatt describes between his arrival at ISP and his examination on June 4, 2024, is insufficient to permit a plausible inference that HSA Fritter facilitated, approved, condoned, or turned a blind eye toward Mynatt's medical needs. After the June 4, 2024, appointment, it was Dr. Marthakis that decided he would not receive the recommended tests, not HSA Fritter. Therefore, it cannot be plausibly inferred that HSA Fritter was deliberately indifferent to Mynatt's needs.

Mynatt has also named Centurion Health as a defendant, although his amended complaint does not make specific allegations in relationship to Centurion. A private company performing a public function can be held liable if its own policies caused an alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Mynatt's amended complaint does not allege facts from which it can be plausibly inferred that Centurion Health had a policy that led to a violation of his constitutional rights. Therefore, he may not proceed against Centurion Health.

For these reasons, the court:

(1) GRANTS Jared A. Mynatt leave to proceed against Dr. Marthakis in her individual capacity for compensatory and punitive damages for deliberate indifference to Mynatt's serious medical needs when she refused to allow testing that had been

recommended by two separate outside physicians without offering any alternative care for Mynatt's condition, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Ron Neal, Jacquline Monaco, Tiffany Turner, Alyssa Hudacin, Sherri Fritter, and Centurion Health LLC;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Marthakis at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 13);

(5) ORDERS Centurion Health of Indiana, LLC to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Dr. Marthakis to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED:  February 3, 2026.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT