UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JARED A. MYNATT,<br><br>Plaintiff,<br><br>v.<br><br>NANCY MARTHAKIS,<br><br>Defendant. | CAUSE NO. 3:24-CV-983-AZ |

OPINION AND ORDER

Jared A. Mynatt, a prisoner without a lawyer, is proceeding in this case against Dr. Nancy Marthakis "in her individual capacity for compensatory and punitive damages for deliberate indifference to Mynatt's serious medical needs when she refused to allow testing that had been recommended by two separate outside physicians without offering any alternative care for Mynatt's condition, in violation of the Eighth Amendment[.]" ECF 15 at 8-9. Dr. Marthakis filed a motion for summary judgment, arguing Mynatt did not exhaust his available administrative remedies before he filed this lawsuit. ECF 27. Mynatt filed a response, and Dr. Marthakis filed a reply. ECF 35, 41. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *see also Chambers v. Sood*, 956 F.3d 979, 984-85 (7th Cir. 2020). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* But inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in

actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Dr. Marthakis provides an affidavit from the Grievance Specialist at Indiana State Prison (ISP) and Mynatt's grievance records, which show the following facts. During the relevant period, an Offender Grievance Process was in place at ISP that required inmates to complete three steps before filing suit: (1) a formal grievance; (2) a Level I appeal to the warden; and (3) a Level II appeal to the Department Grievance Manager. ECF 27-1 at 2; ECF 27-2 at 3. Once the grievance office receives a grievance from any inmate, it "must either return an unacceptable form or provide a receipt for an accepted form within ten (10) business days." ECF 27-2 at 9. Mynatt's grievance records show he submitted four grievances relevant to his claim against Dr. Marthakis, but he did not complete the administrative review process for any of those four grievances. ECF 27-1 at 6-9.

First, on July 9, 2024, Mynatt submitted Grievance 188117, complaining he was not receiving treatment for his stomach issues despite discussing the issues with medical staff. ECF 27-4 at 1. On August 30, 2024, the grievance office received Grievance 188117, issued a receipt, and returned the grievance to Mynatt with a request for additional information, asking him to provide the names of medical staff he had spoken to and how they responded to his requests. *Id.* at 2-3. On September 17, 2024, the

grievance office received an explanation from Mynatt that he had submitted healthcare requests and had not spoken to anyone from medical staff directly. *Id.* at 4. Mynatt also submitted Grievance 189941, reiterating his same complaints from Grievance 188117. ECF 27-5 at 1. The grievance office consolidated Grievances 188117 and 189941 into one grievance and issued a new receipt. ECF 27-1 at 6; ECF 27-5 at 2. On November 25, 2024, the grievance office issued a response denying Grievance 189941, noting Mynatt had been seen by medical staff for his stomach issues. ECF 27-5 at 4. Mynatt never submitted a Level I appeal to the warden, which was a necessary step to fully exhaust Grievances 188117 and 189941. ECF 27-1 at 7.

Next, on July 23, 2024, Mynatt submitted Grievance 190527, alleging he had received inadequate treatment for his stomach issues. ECF 27-1 at 7; ECF 27-6 at 1. The grievance office received this grievance on September 26, 2024, and issued a receipt. ECF 27-6 at 2. On September 30, 2024, the grievance office issued a response denying Grievance 190527, noting Mynatt had been seen by medical staff for his stomach issues. *Id.* at 4. Mynatt submitted a Level I appeal to the warden, which was denied by the warden on November 1, 2024. *Id.* at 5-8. Mynatt never submitted a Level II appeal to the Department Grievance Manager, which was a necessary step to fully exhaust Grievance 190527. ECF 27-1 at 8.

Lastly, on August 4, 2024, Mynatt submitted Grievance 194254, again complaining he had received inadequate treatment for his stomach issues. ECF 27-7 at 1. On November 7, 2024, the grievance office received this grievance, issued a receipt, and

returned the grievance to Mynatt as unprocessed because it was duplicative of Grievances 190527 and 189941. *Id.* at 2-3.

Mynatt does not dispute this grievance history. Instead, he argues that the delays between his submission of the grievances and their receipt by the grievance office made his administrative remedies unavailable. ECF 35. But it is undisputed that he received responses to his grievances before he filed this lawsuit in December 2024. The grievance process required further review of adverse decisions through Level I and Level II appeals. ECF 27-2 at 3, 12-14. Mynatt never appealed the denial of consolidated Grievances 188117 and 189941 to the warden. ECF 27-1 at 7; ECF 27-3 at 2. And although he received a response to Grievance 190527 and pursued a Level I appeal despite the initial delay, he did not seek Level II review after the warden denied that appeal on November 1, 2024. ECF 27-1 at 8; ECF 27-3 at 2; ECF 27-6 at 6-8. He identifies no evidence that the initial delays prevented him from pursuing these remaining appeal steps after receiving the responses. *See Perez v. Siddiqui*, No. 24-1766, 2026 WL 1416376, at *3 (7th Cir. May 20, 2026) (nonprecedential) (rejecting a delay argument where the prisoner received a grievance response and appealed before filing suit).

Accordingly, the undisputed evidence shows that Mynatt received responses to his grievances before filing suit but did not complete the required appeals. Nothing in the record suggests that the initial delays prevented him from pursuing the remaining appeal steps once he received those responses. Dr. Marthakis has therefore met her burden of showing that Mynatt failed to exhaust his available administrative remedies

before filing suit. Summary judgment is warranted in her favor, and this case must be dismissed without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

For these reasons, the court:

(1) GRANTS Dr. Marthakis' motion for summary judgment (ECF 27);

(2) DISMISSES this case WITHOUT PREJUDICE for failure to exhaust administrative remedies; and

(3) INSTRUCTS the clerk to enter judgment accordingly and to close this case.

SO ORDERED on this 13th day of November 2026.

s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT